IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

CAROL CALAWAY WILSON as
Personal Representative of the
Estate of Richard Boggs Calaway
and Trustee for Malissa Calaway beneficiary of
Hartford Insurance Policy No. xxx                                      PLAINTIFF

V.                              NO.  4:08CV04114

HARTFORD INSURANCE COMPANY                                             DEFENDANT

## ORDER

Pending are Defendant's motion for summary judgment and Plaintiff's cross motion for summary judgment. (Docket #'s 20 and 29). For the reasons set forth herein, Defendant's motion is GRANTED and Plaintiff's motion is DENIED.

### Facts

In August 2003, Hartford issued a life-insurance policy to the Honorable Richard Calaway, Policy No. VL9324899 (the "Policy"). The Policy provided for benefits in the amount of $250,000. An independent broker, Louise Logue of Little Rock, was the writing agent on the Policy. Judge Calaway designated his daughter, Malissa Calaway, as the Policy's beneficiary. He designated his sister, Carol Calaway Wilson, as the contingent beneficiary.

The Policy allowed Judge Calaway to change the beneficiary under the Policy at any time by submitting a written notice to Hartford. Specifically, the Policy provided: "To change the . . . Beneficiary, notify Us In Writing while the Insured is alive. After We receive written notice, the change will be effective as of the date You signed such notice, whether or not . . . the Insured is living when We receive it." The Policy defined In Writing as "in a written form satisfactory to Us."

In October 2004, Judge Calaway changed the Policy's beneficiary to the "Estate of Richard Calaway, Carol Wilson as Trustee and Executrix under Last Will and Testament of Richard Calaway." Hartford recorded this change and mailed proof of it to Judge Calaway.

Plaintiff states that Judge Calaway was diagnosed with Stage IV terminal lung cancer in October, 2004, causing him to change the beneficiary on the Hartford policy to his sister, as trustee for his then minor daughter. Plaintiff contends that at the same time, Judge Calaway executed a Will leaving everything he owned in trust to his daughter. Judge Calaway married Margarita Zavalza-Calaway in March 2006.

In the morning of December 14, 2007, Judge Calaway called Ms. Logue to make an appointment to determine what he needed to do to change the Policy's beneficiary. Ms. Logue scheduled Judge Calaway to come to her office that afternoon. Ms. Logue called Hartford later that morning and explained to Hartford that Judge Calaway was ill and that he had questions about the Policy because he could not locate copies of his statements. Plaintiff contends that Ms. Logue told Hartford that Judge Calaway "just called in and he's sick and he's not thinking straight." Ms. Logue also said that she had switched brokerage firms and was unsure whether she remained the broker of record on the Policy. Hartford indicated that Ms. Logue was still the broker of record but that her status was inactive in view of her changing brokerage firms and told Ms. Logue how to reactivate her status. Hartford then called Judge Calaway and added him to the telephone conversation. Judge Calaway identified himself and provided the last four digits of his Social Security number, his former mailing address, and his new mailing address. Hartford noted that it still had Judge Calaway's former mailing address in its records, explaining why Judge Calaway had not received statements regarding the Policy. Judge Calaway told Hartford

that he wanted to change the beneficiary under the Policy.  Hartford advised that it would send a change-of-beneficiary form to Ms. Logue by electronic mail or fax and explained that the completed form could be faxed back to Hartford.  The rest of the conversation involved processing the change of Judge Calaway's address and discussing the status and cash value of the Policy and whether Judge Calaway had any other policies with Hartford.  Plaintiff claims that Judge Calaway did not indicate who he planned to designate as beneficiary and that all of the writing on the change of beneficiary form does not appear to be Judge Calaway's.  Further, Plaintiff argues that Judge Calaway's participation in the conversation was minimal.

      Plaintiff argues that while waiting for Judge Calaway to come to her office, Ms. Logue called Hartford back inquiring about the change of beneficiary form.  In this conversation, Logue stated that her client was "very ill" and "he could not be called back."

      Judge Calaway came alone to Ms. Logue's office that afternoon. Ms. Logue had received the change-of-beneficiary form from Hartford.  Ms. Logue assisted Judge Calaway in completing the form and witnessed his signing the form to make Mrs. Zavalza-Calaway the beneficiary under the Policy.   While Judge Calaway was with her, Ms. Logue again called Hartford. During this telephone conversation, Ms. Logue discussed whether Judge Calaway had any other Hartford policies. Judge Calaway participated in the conversation and identified himself to Hartford. Hartford informed Judge Calaway and Ms. Logue that Judge Calaway had only one policy with Hartford.   Judge Calaway spent approximately one hour at Ms. Logue's office that day.  He drove himself to the meeting.  Ms. Logue understood that he was still working as a judge with the Arkansas Workers' Compensation Commission, and he was dressed as if he had come from work.  According to Ms. Logue, Judge Calaway displayed "a good memory of things."   Judge

Calaway called Mrs. Zavalza-Calaway from Ms. Logue's office to get her Social Security number, as he needed it to complete the change-of-beneficiary form. Ms. Logue also observed Judge Calaway speak on the telephone with Hartford and make and receive several unrelated calls on his cellular telephone.

Ms. Logue believed Judge Calaway was competent. At deposition, she testified: "Well, I knew he had cancer, but he seemed okay. I mean, he seemed like the same Richard I've always known. And just, you know, kind of—you know, he was the same as always. I mean, I knew he was sick and he might have been a little bit weak in his voice. But he was 100 percent there. He knew what he was doing." Ms. Logue testified that she would not have assisted Judge Calaway with changing the beneficiary under the Policy if she had concerns about his competency, and Defendant claims that Hartford was not given any reason to question Judge Calaway's competency. Plaintiff argues that Hartford should have questioned Judge Calaway's competency because it had notice that he was ill and was not thinking straight.

When Hartford received from Judge Calaway the form to change the beneficiary under the Policy to Mrs. Zavalza-Calaway, Hartford recorded the change and mailed proof of it to Judge Calaway. On December 20, 2007, Judge Calaway was admitted to the hospital for complaints of stomach pain and headaches. Plaintiff contends that he was also having trouble with short term memory, and difficulty following a line of thought. Further, Dr. David Lipschitz who admitted Judge Calaway to the hospital on December 17, 2007, stated that from that date until his death, Judge Calaway was incapable of making decisions about his finances or other important matters. Judge Calaway died on April 24, 2008.

A few days after Judge Calaway's death, Mrs. Zavalza-Calaway's sister-in-law,

Christine West, called Hartford about the Policy. Ms. West told Hartford that Judge Calaway had died, and Hartford indicated that it would mail a Death Benefits Claim Form to Mrs. Zavalza-Calaway. The next day, Hartford sent a letter to Mrs. Zavalza-Calaway and provided the claim form. In the letter, Hartford noted that Mrs. Zavalza-Calaway was "the beneficiary of record" and requested that she complete the claim form and provide a certified death certificate to Hartford. On May 12, 2008, Hartford received the completed claim form and certified death certificate. The death certificate noted that Judge Calaway died of natural causes. The next day, Hartford issued a check to Mrs. Zavalza-Calaway for $250,632.61.

Nearly three weeks after the payment of benefits, Ms. Wilson's attorney called Hartford about the Policy. Neither Ms. Wilson nor anyone on her behalf had contacted Hartford about the Policy before that time.

Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56. The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry is the threshold inquiry of determining whether there is a need for trial -- whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be invoked carefully so that no person will be improperly deprived of a trial of disputed factual

issues. *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*, 444 U.S. 991 (1979). The Eighth Circuit set out the burden of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the moving party for summary judgment is only to demonstrate, *i.e.*, '[to] point out to the District Court,' that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id.* at 1339. (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th Cir. 1988) (citations omitted)(brackets in original)). Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248.

## Discussion

Ark Code Ann. §23-79-125 provides "statutory protection" to insurers from any further liability upon payment of policy benefits unless the insurer received written notice before the payment of benefits that someone else may be a proper beneficiary. *See USAble v. Fow*, 307 Ark. 379, 383, 820 S.W.2d 453, 455 (1991). Ark. Code Ann. §23-79-125 states:

> (a) Whenever the proceeds of or payments under a life or accident and health insurance policy or annuity contract become payable in accordance with the terms of the policy or contract, or the exercise of any right or privilege thereunder, and the insurer makes payment of the amount in accordance with the terms of the policy or contract or in accordance with any written assignment thereof, the person then designated in the policy or contract or by the assignment as being entitled to the benefits shall be entitled to receive the proceeds or payments and to

6

give full acquittance therefor.

(b) The payments shall fully discharge the insurer from all claims under the policy or contract unless, before payment is made, the insurer has received at its home office written notice by or on behalf of some other person that the other person claims to be entitled to the payment or some interest in the policy or contract.

Plaintiff does not dispute that Hartford did not receive written notice before the payment of benefits to Zavalza-Calaway that someone else may have been the proper beneficiary. Plaintiff argues that Defendant ignored "red flags" and negligently processed the December 2007 change of beneficiary.  The Court disagrees.

"The insurer is not under any duty to investigate the mental competency of the insured to change the beneficiary unless it knows of circumstances reasonably suggesting the probability of his or her mental incompetency."  4 Couch on Ins. §60.77, see also, *Demerath v. Knights of Columbus,* 268 Neb. 132, 680 N.W.2d 200 (2004).  Plaintiff failed to present evidence which demonstrates that Hartford had knowledge of circumstances reasonably suggesting the probability that the change of beneficiary executed by Judge Calaway in December, 2007 was improper.

On December 14, 2007, Judge Calaway expressed to both Ms. Logue and to Hartford his desire to change the beneficiary on the Policy.  During the conversation with Hartford, Judge Calaway gave the last four digits of his social security number and former and current address.  Ms. Logue testified that Judge Calaway drove himself to their meeting, she observed his demeanor, he executed the change of beneficiary form in her presence, and she believed that he was competent at the time.  In the context of the conversation between Ms. Logue and Hartford,

her comment that Judge Calaway was ill and was not "thinking straight," related to the fact that Judge Calaway was not able to find any of his papers regarding his Policy.  The Court finds that no evidence exists of circumstances which would reasonably suggest to Hartford the probability that Judge Calaway was incompetent at the time he executed the change of beneficiary.  Thus, Hartford was under no duty to investigate the competency of Judge Calaway.  Hartford is entitled to the statutory protection afforded pursuant to Ark Code Ann. §23-79-125.  Because Hartford did not receive written notice questioning Judge Calaway's December 2007 change of beneficiary before it paid benefits to Mrs. Zavalza-Calaway, Hartford is entitled to judgment as a matter of law.

## Conclusion

For the reasons set forth herein, the Court finds that Defendant's motion should be, and hereby is, granted.  Plaintiff's motion is DENIED.

IT IS SO ORDERED this 24th day of September, 2009.

_____
James M. Moody
United States District Judge